UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DYNAMIC INTERNATIONAL AIRWAYS,
LLC.,

                          Plaintiff,                    15-cv-7054 (PKC)

          -against-                                     MEMORANDUM
                                                        AND ORDER

AIR INDIA LIMITED,

                          Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Dynamic International Airways, LLC ("Dynamic") brings suit in contract

against defendant Air India Limited ("Air India") for breach of the terms of an agreement

regarding air transportation services between the Republic of India and the Kingdom of Saudi

Arabia.  Specifically, Dynamic claims, among other things, that Air India has failed to pay

Dynamic approximately $8.8 million for air carriage Dynamic provided to Indian citizens during

the 2013 and 2014 Hajj—the annual Islamic pilgrimage to Mecca.  Air India has moved to

compel arbitration in India pursuant to the terms of two charter agreements entered into by the

parties.  Dynamic has cross-moved to compel arbitration in New York and to enjoin Air India

from pursuing an Indian arbitration in accordance with a separate agreement to arbitrate

allegedly entered into by the parties during the pendency of this litigation.  For reasons to be

explained, Air India's motion to compel arbitration is granted, Dynamic's cross-motion for

arbitration and injunctive relief is denied, and this action is stayed pending the outcome of the

arbitration in India.

BACKGROUND.

Subject matter jurisdiction is premised on diversity of citizenship.  (First Amended Complaint ("FAC") ¶ 12); 28 U.S.C. § 1332(a).  Dynamic is a limited liability company formed under the laws of the Commonwealth of Virginia, whose two constituent members are other limited liability companies.  (FAC ¶ 10).  Those two member companies each have as a sole member one natural person.  (FAC ¶ 10).  One is a citizen of California and the other is a citizen of Utah.  (FAC ¶ 10).  Air India is a company formed under the laws of India and is fully owned and controlled by the Government of India.  (Declaration of Ravichandra Vasant Kini ("Kini Decl.") ¶ 3).

Dynamic operates a fleet of aircraft on behalf of tour and cargo operators domestically and internationally.  (FAC ¶ 9).  In 2013, Dynamic entered into a contract with Air India to provide air transportation between India and Saudi Arabia to approximately 6,100 pilgrims in connection with that year's Hajj pilgrimage (the "2013 Agreement").  (Declaration of Martin F. Gusy ("Gusy Decl."), Ex. B).  Similarly, in 2014, Dynamic entered into another contract with Air India to carry approximately 36,000 pilgrims to Saudi Arabia for the 2014 Hajj (the "2014 Agreement").  (Gusy Decl., Ex. A).  Dynamic claims that it provided the charter services contracted for by Air India, but that Air India has refused to pay Dynamic all that it is owed under the two Agreements.  (FAC ¶ 34).  Specifically, Dynamic claims that Air India owes it $8.3 million for passenger carriage in 2014, $74,000 for passenger carriage in 2013, and $445,000 because of Air India's failure to return a surety bond.  (FAC ¶ 34).  Dynamic also claims that Air India owes it additional damages upwards of $84 million because it relied on promises made to it by Air India regarding hiring Dynamic to transport pilgrims during the 2015 and 2016 Hajj, which, according to Dynamic, Air India has now rescinded.  (FAC ¶¶ 44-48).

Both the 2013 and 2014 Agreements between Dynamic and Air India included a clause entitled "Settlement of Disputes" (hereinafter "Clause 9").  (Gusy Decl., Ex. A, B Clause 9).  Clause 9 reads as follows:

> In case of any difference/dispute, the parties shall resort to amicably resolve it through negotiations/discussions across the table, failing which it shall be finally resolved by a designated Authority determined by the Ministry of Civil Aviation, whose decision shall be final and binding on both the parties.

(Gusy Decl., Ex. A, B Clause 9).

In September 2015, Dynamic filed this action in diversity against Air India.  (Dkt. 1, 8).  On December 7, 2015, Air India filed a pre-motion letter seeking the Court's permission to file a motion to compel arbitration pursuant to Clause 9 of the 2013 and 2014 Agreements or, alternatively, a motion to dismiss for failure to state a claim and for *forum non conveniens*.  (Dkt. 15).   Dynamic filed a response to Air India's letter in which it argued that Clause 9 did not represent an agreement to arbitrate, but that Air India's December 7 pre-motion letter, which expressed Air India's "consent that all of Dynamic's claims be arbitrated," was an offer to arbitrate all of Dynamic's claims, which Dynamic "accept[ed]".  (Dkt. 17).  On December 16, 2015, Air India filed another letter with the Court requesting an adjournment of the pending conference to "afford the parties sufficient time to agree upon the location, forum and terms of arbitration" in light of both parties pre-motion letters, which, according to Air India's Letter, represented an "agree[ment] to arbitrate Plaintiff's claims" (hereinafter the "December 16 Letter").  (Dkt. 18).  Although signed by counsel for Air India only, counsel for Dynamic was involved in drafting some of the language in the December 16 Letter.  (May 6 Declaration of Adam Finkel ("Finkel Decl."), Ex. D-E).  The Court granted the requested adjournment.  (Dkt. 19).

- 3 -

During the period of adjournment, the parties attempted to negotiate the terms of an arbitration arrangement without the involvement of the Court.  (Gusy Decl., Ex. C-H).  Air India made a proposal to arbitrate in India under the procedures set forth in the Indian Arbitration and Conciliation Act of 1996 (the "IACA") with Ms. Gargi Kaul as arbitrator.  (Gusy Decl., Ex. D).  In fact, just prior to Air India's proposal, the Government of India formally appointed Ms. Kaul, who was Joint Secretary and Financial Advisor at the Ministry of Civil Aviation in India, as the "designated Authority" to settle the dispute between Air India and Dynamic pursuant to Clause 9 of the 2014 Agreement.  (Gusy Decl., Ex. E).  Dynamic rejected Air India's proposal and offered its own proposal to arbitrate in New York.  (Gusy Decl., Ex. F, G).  Air India also rejected Dynamic's proposal and the parties sought, but failed, to agree on other mutually acceptable terms of arbitration.  (Gusy Decl., Ex. H).

On April 5, 2016, Air India moved to compel arbitration in this action pursuant to Clause 9.  (Dkt. 26).  Two weeks later, Dynamic cross-moved to compel arbitration on the basis of the December 16 Letter and to enjoin Air India from further pursuing the Indian arbitration. (Dkt. 34).  While those motions have been pending before this Court, the Government of India has removed Ms. Kaul as "Designated Authority" and appointed P. Sesh Kumar as "Arbitrator" in the Indian arbitration between Dynamic and Air India.  (June 13, 2016 Letter from Rohit Sabharwal ("June 13 Letter")).  On June 7, 2016, a first meeting of that arbitration was held in New Delhi, India.  (June 13 Letter).  A representative from Dynamic was present at the June 7 meeting, but, according to Dynamic, "for settlement purposes only."  (June 16, 2016 Letter from Cozen O'Connor ("June 16 Letter")).

DISCUSSION.

      Both parties have moved to compel arbitration of Dynamic's claims against Air India.  They disagree, however, over whether Clause 9 of the 2013 and 2014 Agreements or the December 16 Letter are binding agreements to arbitrate and, thus, under what terms they are bound to arbitrate.  Air India makes two related arguments in favor of arbitration under the terms set forth in Clause 9.  First, it asserts that the threshold question of whether Clause 9 is an enforceable arbitration clause is for the arbitrator and not the Court to decide.  And second, even if the Court concludes that it, rather than the arbitrator, should decide the threshold question, Clause 9 is a binding arbitration clause that provides for arbitration in India with an arbitrator appointed by the Ministry of Civil Aviation of India.

      Dynamic, meanwhile, asserts that Clause 9 is not a valid, enforceable arbitration clause.  Instead, it argues that the parties are legally bound to arbitrate Dynamic's claims on the basis of the December 16 Letter submitted to the Court by Air India.  According to Dynamic, the Letter itself is an enforceable "*ex post* agreement" to arbitrate, the terms of which should be set by the Court.  On that basis, Dynamic asks the Court to enjoin the pending Indian arbitration and to compel arbitration in New York.

      1.  Legal Standard:

      "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution."  Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998)) (internal quotation marks omitted).  The Federal Arbitration Act (the "FAA") "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)) (internal

quotation marks omitted).  If a provision providing for arbitration is part of a contract "affecting interstate or international commerce, it is governed by the [FAA]."  Shaw Group Inc. v. Triplefine Intern. Corp., 322 F.3d 115, 120 (2d Cir. 2003).  "Pursuant to the FAA, the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'"  Id. (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996)).

Because the FAA creates a strong presumption in favor of arbitration, "any doubts concerning the scope of arbitrable issues" should be resolved in favor of arbitration.  Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25).  That presumption, however, does not apply "when the doubt concerns who should decide arbitrability."  Id. Instead, because "parties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration," id., federal law reverses the presumption and favors judicial rather than arbitral resolution of the question "who (primarily) should decide arbitrability."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995).  In other words, "the issue of arbitrability may only be referred to the arbitrator if 'there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."  Bell, 293 F.3d at 566 (quoting Bybyk, 81 F.3d at 1998-99) (alteration in original).

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  First Options, 514 U.S. at 944.  "In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment."  Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

Because the underlying contracts for air transportation services between Dynamic and Air India affected international commerce, both alleged arbitration agreements at issue in this case are governed by the presumptions derived from the FAA.  See Shaw, 322 F.3d at 120. And, with no material fact in dispute, the cross-motions to compel arbitration are suitable for resolution at this stage.

    2.  Choice of Law:

While the FAA provides the overarching framework for adjudicating both parties' motions, the Court must decide what substantive law applies to each question of contract formation and construction presented in this case.  To recap, those questions are: (1) whether Air India's December 16 Letter is an enforceable agreement to arbitrate; (2) whether the Court or the arbitrator should decide if Clause 9 is an enforceable arbitration clause; and (3) whether, if the Court decides it should adjudicate the arbitrability question itself, Clause 9 is an enforceable arbitration clause.  Dynamic argues that the Court should apply federal common law to all three questions and asserts that federal common law "comprises of generally accepted principles of contract law."  In contrast, Air India asserts that state-law applies and that the Court must use New York's choice-of-law rules to determine whether to use New York or Indian law.

In asserting that federal common law provides the relevant substantive law, Dynamic relies primarily on cases where the court's subject matter jurisdiction was premised on federal question jurisdiction arising out of the FAA.  See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 96 (2d Cir. 1999); In re Salomon Inc. Shareholders' Derivative Litig. 91 Civ. 5500 (RRP), 68 F.3d 554, 559 (2d Cir. 1995).  The Court's jurisdiction here, however, is premised on diversity of citizenship.  (FAC ¶ 12).  While the Second Circuit cases cited by Dynamic do apply federal common law to arbitration

questions, those same cases contemplate using state-law to construe arbitration agreements in cases that, like this one, invoke diversity jurisdiction.  See Smith/Enron 198 F.3d at 96 ("First, as this is a federal question case under 9 U.S.C. § 203 and not a diversity case, we see no persuasive reason to apply the law of New York simply because it is the forum of this litigation."); In re Salomon 68 F.3d at 559 ("Were our jurisdiction predicated upon diversity, there might be an argument that we should defer to the New York courts when construing the choice of law/forum provision.").

　　　　　Critically, the balance of more recent Second Circuit case law supports Air India's position that the Court should apply state-law to the question of whether a party is bound by a purported agreement to arbitrate.  See NewOak Capital, 645 F.3d at 526 ("Finally, in deciding whether a contractual obligation to arbitrate exists, courts should generally apply state-law principles that govern formation of contracts.") (internal quotation marks omitted); Shaw, 322 F.3d at 120 ("Whether parties have obligated themselves to arbitrate certain issues, including the question of arbitrability, is determined by state law."); Bell, 293 F.3d at 566 ("[W]hen deciding whether the parties agreed to arbitrate a certain matter including arbitrability, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.") (internal quotation marks omitted).  Even the Supreme Court's opinion in First Options explicitly states that "courts . . . generally should apply ordinary state-law principles that govern formation of contracts" when deciding whether parties have agreed to arbitrate.  514 U.S. at 944.  Because this Court's jurisdiction is premised on diversity, the Court concludes that it should apply state-law to the formation of contract issues presented in this case, bearing in mind the presumptions provided by the FAA.  See Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG,

970 F. Supp. 2d 157, 165 (S.D.N.Y. 2013) (applying New York law to the question of whether a non-signatory to a contract is bound by the contract's arbitration clause).[1]

Accordingly, the Court must decide which jurisdiction's laws apply: New York or India.  "A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law."  Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001).  "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws."  Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998).  Regarding the first question, whether Air India's December 16 Letter is an enforceable arbitration agreement, neither party argues that there is a conflict of law between New York law and Indian law.  In fact, Air India tacitly applies New York law to the question.  Moreover, because the letters allegedly forming this "ex post" arbitration agreement were submitted to this Court sitting in New York during the course of this litigation, any purported contract memorialized in those letters was formed in New York.  As such, the Court sees no reasonable basis for applying Indian law.  For those reasons, the Court concludes that New York contract law applies.

On the second question, whether or not the issue of arbitrability must be referred to the arbitrator, Air India asserts that there is a true conflict between New York law and Indian law and that under New York choice-of-law rules Indian law should apply.  However, the law cited to by Air India does not establish that there is any conflict between Indian law and New York law regarding general principles of contract formation or construction.  Instead, Air India cites to law demonstrating that New York and India have different presumptions about whether

---

[1] Even if federal common law did apply, Dynamic has not shown that there are any material differences between the "generally accepted principles of contract law" making up federal common law of contract and the general principles of contract law under New York or Indian law.

courts or arbitrators should determine arbitrability in the first instance.  According to Air India,

New York law, like federal law, favors judicial determinations while Indian law places exclusive

jurisdiction to rule on questions of arbitrability in the hands of the arbitrator.

> Those state-law presumptions, however, are not relevant in this case because
federal law provides the operative presumptions on arbitrability: namely, that "arbitration is a

matter of contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit," Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp.

Trucking Co., 944 F.2d 1037, 1042 (2d Cir. 1991) (quoting AT & T Technologies, Inc. v.

Communications Workers of America, 475 U.S. 643, 648 (1986)), and that Courts should not

"assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and

unmistakabl[e]' evidence that they did so," First Options, 514 U.S. at 944.  See Perry v. Thomas,

482 U.S. 483, 491-92 (1987) (holding that the clear federal policy providing for the full

enforcement of private arbitration agreements, codified in § 2 of the FAA, preempted California

statute requiring litigants be provided a judicial forum for resolving wage disputes); Alghanim v.

Alghanim, 828 F. Supp. 2d 636, 646 (S.D.N.Y. 2011) ("To the extent that plaintiff argues that a

presumption contrary to that expressed in the FAA is present in Kuwaiti law and applies when

analyzing the March Agreements, his argument is unavailing.").  Only if the Court needed to

construe the language of the 2013 and 2014 Agreement to determine if there was "clear and

unmistakable evidence" that the parties agreed to arbitrate arbitrability, which it need not do, the

relevant law would be "ordinary state-law principles that govern formation of contracts."  First

Options, 514 U.S. at 944.

> Regarding the third question, whether Clause 9 is an enforceable arbitration
agreement, the Court must apply "ordinary state-law principles that govern formation of

contracts." Id.  Again, neither party argues that the laws governing contract formation and

construction in New York conflict with those in India.  Instead, Air India assumes *arguendo* that

the laws conflict, applies New York choice-of-law rules, and concludes that Indian law should

apply.  Because no party has shown that the general principles of New York contract law and

Indian contract law conflict, the Court need not engage in a choice-of-law analysis, but rather

will apply New York law.  See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137,

143 (2d Cir. 2004) ("In the absence of substantive difference, however, a New York court will

dispense with choice of law analysis; and if New York law is among the relevant choices, New

York courts are free to apply it.").  Moreover, even if the Court applied the Indian law set forth

by Air India, the outcome would be the same.

     3.  Application:

       a.  The December 16 Letter.

Before addressing Air India's motion to compel arbitration pursuant to Clause 9,

the Court takes up Dynamic's argument that Air India's December 16 Letter is a separate and

binding agreement between the parties to arbitrate Dynamic's claims.  Because the parties did

not agree on any material terms of the arbitration, the December 16 Letter is not an enforceable

arbitration agreement.  For that reason, Dynamic's motion to compel arbitration on the basis of

the December 16 Letter is denied.

"To create a binding contract, there must be a manifestation of mutual assent

sufficiently definite to assure that the parties are truly in agreement with respect to all material

terms." Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007)

(quoting Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589

(1999)) (internal quotation marks omitted).  "[A] mere agreement to agree, in which a material

term is left for future negotiations, is unenforceable." Id. (quoting Joseph Martin, Jr.,

Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981)) (internal quotation marks

omitted).  However, "[a] contract is not necessarily lacking in all effect merely because it

expresses the idea that something is left to future agreement."  Id. (quoting May Metro. Corp. v.

May Oil Burner Corp., 290 N.Y. 260, 264 (1943).  "The key, of course, is the intent of the

parties: whether the parties intended to be [] bound, and if so, to what extent."  Adjustrite Sys.,

Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 548 (2d Cir. 1998).  When discerning intent, a court

looks to "the words and deeds [of the parties] which constitute objective signs in a given set of

circumstances."  Id. (alterations in original).

         The December 16 Letter states that "the parties agreed to arbitrate Plaintiff's

claims and the Defendant has agreed to provide its proposed location, forum and terms of

arbitration to the Plaintiff . . . ."  (December 16 Letter).  As the text of the Letter itself

demonstrates, the parties left out at least three terms critical to any arbitration: the location,

forum and rules of the arbitration.  Instead of agreeing to those terms upfront, the Letter

contemplates that the parties would negotiate those terms in the future.  Under New York law,

"[a] contract is incomplete and unenforceable when, as to some essential term, there has been no

agreement but only an agreement to agree in the future."  May Metro. Corp. v. May Oil Burner

Corp., 290 N.Y. at 264.  An objective assessment of the parties' intent regarding the December

16 Letter is that they entered "an agreement to agree" in the future to a mutually acceptable

arbitration arrangement.  Such a document is best understood as a "preliminary agreement,"

which is generally not binding and enforceable on the parties.  Adjustrite Sys., Inc., 145 F.3d at

548.

It is possible, however, for certain preliminary agreements to be binding on the parties.  New York law contemplates two such preliminary agreements.  "In the first, the parties have reached complete agreement on all of the issues that require negotiation, but they have not yet completely formalized their agreement."  Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989).  "In the second, the parties have committed themselves to some major terms, but some terms will remain to be negotiated . . . ."  Id.  This second type of preliminary agreement is called a "binding preliminary commitment" and commits parties only "to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework."  Adjustrite Sys., Inc., 145 F.3d at 548 (internal quotation marks omitted) (alterations in original).  Even still, "if the preliminary writing was not intended to be binding on the parties at all, the writing is a mere proposal, and neither party has an obligation to negotiate further."  Id.  The key, again, is the objective intent of the parties.  Id. at 548-49.  When discerning the parties' intent as to a preliminary agreement, a court should consider five factors in particular: "(1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions."  Arcadian, 884 F.2d at 72 (internal quotation marks omitted).

The December 16 Letter is not a preliminary agreement of the first type.  While it is possible to interpret some of the language of the letter—particularly the phrase "the parties agreed to arbitrate Plaintiff's claims"—as evidence that the parties intended to be fully bound by this purported arbitration agreement, the absence of any agreement as to the location, forum, or rules of arbitration cuts more persuasively against finding the requisite intent.  Without those critical terms, it cannot be said that the parties "reached complete agreement on all of the issues

- 13 -

that require negotiation."  Arcadian, 884 F.2d at 72; see Oilex A.G. v. Mitsui & Co. (U.S.A.), 669 F. Supp. 85, 87 (S.D.N.Y. 1987) (denying motion to compel arbitration because "[t]he exchange of documents leaves it unclear . . . whether [the parties] agreed on governing law and place of arbitration").

Instead, the December 16 Letter is either an unenforceable "proposal" or, at most, "a binding preliminary commitment" to engage in good faith negotiations.  See Adjustrite Sys. Inc., 145 F.3d at 547-48.  To the extent it is an agreement to negotiate the missing material terms, Air India fulfilled its obligations.  After submitting the December 16 Letter to the Court, the parties attempted in good faith to negotiate the terms of an arbitration, but were unable to reach an agreement.  (Gusy Decl., Ex. D, F-H).  In any event, the fact that three critical terms were missing from the December 16 Letter, that the parties attempted to later negotiate those terms and failed, and that an arbitration agreement that lacks those terms is generally unenforceable demonstrate that the parties' intent was not to be bound by the December 16 Letter.  Accordingly, Dynamic's cross-motion to compel arbitration is denied.[2]

b.  Clause 9 of the 2013 and 2014 Agreements.

Neither party disputes that the 2013 and 2014 Agreements are valid, enforceable contracts between the parties.  Indeed, Dynamic's underlying claims against Air India are premised on that fact.  They do, however, dispute whether Clause 9 provides for binding arbitration.  In support of its motion to compel arbitration, Air India contends that Clause 9 is a valid and enforceable arbitration clause.  Dynamic, on the other hand, argues that Clause 9 is not an agreement to arbitrate because it does not include the word "arbitrate" and is otherwise

---

[2] Because the Court concludes that the December 16 Letter is not an enforceable agreement to arbitrate, it is not necessary to reach Air India's argument that the documents themselves are inadmissible to show an agreement pursuant to Rule 408, Fed. R. Evid.

ambiguous.  Before reaching the merits of the question of whether Clause 9 is an enforceable

arbitration clause, however, Air India argues that the Court must decide whether it should resolve

the issue at all.  In other words, Air India asserts that the law requires the Court to answer a

threshold question: should it submit the parties' dispute over the existence of the arbitration

clause to arbitration or resolve it itself?

> i.     *The Court Should Decide Whether Clause 9 is a Valid and
> Enforceable Arbitration Clause.*

When deciding whether a motion to compel arbitration should be granted, a Court

must conduct the following inquires:

> [F]irst, it must determine whether the parties agreed to arbitrate;
> second, it must determine the scope of that agreement; third, if
> federal statutory claims are asserted, it must consider whether
> Congress intended those claims to be nonarbitrable; and fourth, if
> the court concludes that some, but not all, of the claims in the case
> are arbitrable, it must then decide whether to stay the balance of
> the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quoting Oldroyd, 134

F.3d at 75-76).  The Court's role in conducting the first inquiry—whether the parties agreed to

arbitrate—derives directly from the well-settled principle that "arbitration is a matter of contract

and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

submit."  Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co., 944

F.2d at 1042 (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475

U.S. at 648) (internal quotation marks omitted).  Air India's assertion that the Court must submit

the question of whether Clause 9 is an enforceable arbitration clause to the "designated

Authority" in the first instance interferes with the Court's responsibility to determine whether the

parties have agreed to arbitration at all.  Doing as Air India suggests risks requiring Dynamic to

submit to arbitration when it is not entirely clear that is has contracted to do so.  See First

Options, 514 U.S. at 944 (explaining that courts should not, "assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"). For those reasons, the Court concludes that it must decide the threshold issue itself.

There is some support for Air India's position in the case law dealing with issues of arbitrability. For example, the Second Circuit has repeatedly held that "the issue of arbitrability may only be referred to the arbitrator if 'there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Bell, 293 F.3d at 566 (quoting Bybyk, 81 F.3d at 1998-99) (alteration in original). The Second Circuit has then stated in *dictum* that the "clear and unmistakable evidence" standard applies even where the arbitrability dispute is about the very existence of an agreement to arbitrate. See Abram Landau Real Estate v. Bevona, 123 F.3d 69, 72 (2d Cir. 1997) ("When parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue, absent a clear and unmistakable delegation of that authority to an arbitrator."); Bell, 293 F.3d at 568 ("Even if the existence of an arbitration agreement were in dispute, the Court would still be bound to analyze the parties' intent under the First Options standard, as First Options itself focused on the absence of an agreement to arbitrate."). Nevertheless, this Court is not aware of any case that stands for the proposition that a court should grant a motion to compel arbitration even though the parties dispute whether the clause in question—the only purported dispute resolution clause in any contract between the parties—actually requires arbitration at all.

It may be the case that the question posed here is fundamentally different than the arbitrability questions the Second Circuit was contemplating when it made those statements in *dictum*. For example, the Supreme Court's decision in Howsam v. Dean Witter Reynolds, Inc.

explains that there are two different types of "gateway disputes"—questions whose "answer will determine whether the underlying controversy will proceed to arbitration on the merits"—and that one of those types is for the court exclusively to decide.  537 U.S. 79, 83-84 (2002).  More specifically, the Supreme Court in Howsam stated that "a gateway dispute about whether the parties are bound by a given arbitration clause," which is identical to the question posed here, "raises a 'question of arbitrability' for a court to decide."  537 U.S. at 84; see John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation respectively).

On the other hand, the analysis may be less categorical than the Howsam decision implies.  The "clear and unmistakable evidence" standard might apply to all "arbitrability" questions, except that, where the parties disagree that any clause in their contract requires them to submit to arbitration, a court cannot determine the intent of the parties to the required degree of certainty without actually deciding the threshold issue on the merits.  See First Options, 514 U.S. at 947 (applying the "clear and unmistakable evidence" standard but holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement where the non-signatory forcefully objected to arbitration).  The Court concludes that it, and not the "designated Authority," should decide whether Clause 9 is an enforceable arbitration clause.

ii.   *Clause 9 is an Enforceable Arbitration Clause.*

Under New York law, "an arbitration clause in a written agreement is enforceable . . . when it is evident that the parties intended to be bound by the contract."  Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 144 (2008) (internal quotation mark omitted).  The Second Circuit has

identified certain principles of New York contract law relevant to construing arbitration agreements.  Shaw, 322 F.3d at 121.  Those principles are:

> (1) [i]n interpreting a contract, the intent of the parties governs; (2) [a] contract should be construed so as to give full meaning and effect to all of its provisions; (3) words and phrases in a contract should be given their plain meaning; and (4) ambiguous language should be construed against the interest of the drafting party.

Id. (quoting Bybyk, 81 F.3d at 1199) (internal quotation marks omitted).

Applying those principles to the 2013 and 2014 Agreements, the Court concludes that Clause 9 is a valid and enforceable arbitration clause.  Clause 9 plainly states the parties' intent to submit "any difference/dispute . . . [to be] finally resolved by a designated Authority determined by the Ministry of Civil Aviation, whose decision shall be final and binding on both the parties."  (Gusy Decl., Ex. A).  Such a broad grant of power to a third-party authority demonstrates that Clause 9 is a "clear, explicit and unequivocal agreement to arbitrate."  Fiveco, Inc., 11 N.Y.3d at 144 (internal quotation marks omitted).

Dynamic makes two related arguments explaining why Clause 9 is not a valid arbitration clause.  First, it emphasizes that Clause 9 does not use the words "arbitration" or "arbitrator."  And, second, it argues that the Clause is ambiguous.  Specifically, it asserts that the word "Authority" and the phrase "whose decision shall be final and binding" have no clear meaning.  Both of Dynamic's arguments are unavailing.

Although Clause 9 does not explicitly use the words "arbitration" or "arbitrator," the only reasonable interpretation of Clause 9's language is that it requires final, binding dispute resolution before a designated third-party in India.  See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 830 (2d Cir. 1988) (holding that, under federal law, a dispute resolution clause was an enforceable arbitration clause, even though the contract

- 18 -

language in question "does not employ the word 'arbitration,'" because the language used evidenced the parties intent to submit some disputes to arbitration).  The key characteristic of an arbitration is the settlement of a controversy by decision of a "person or persons chosen by the parties or appointed under statutory authority."  Webster's Third New International Dictionary (2002).  The agreed-to appointment of a "designated Authority determined by the Ministry of Civil Aviation" squarely fits that definition.

Moreover, the clause and its terms are not ambiguous.  When read in context with the rest of the clause, the word "Authority" refers to a non-judicial decision maker—i.e. an arbitrator—and the phrase "whose decision shall be final and binding on both parties" refers to the decision of the "Authority," not the Ministry of Civil Aviation's appointment of someone as arbitrator.  The dictionary definition of "arbitrator" is "a person . . . chosen to settle by arbitration the differences between two parties in controversy; . . . one with absolute power of deciding."  Webster's Third New International Dictionary (2002).  Again, the "designated Authority," appointed by an agency of the Indian government, is exactly that: a third-party arbitrator.  The term, when read in context, could not reasonably mean a judicial tribunal.

Nor is the phrase "whose decision shall be final and binding on both parties" ambiguous.  It plainly refers to the effect of the "Authority's" resolution of the parties' dispute, mirroring the use of "finally resolved" earlier in the clause.  In fact, as Dynamic itself points out, the Ministry of Civil Aviation in India does not view its own appointment power to be "final and binding on the parties" as it has already replaced the "designated Authority" at least once in this case.

Dynamic also does not explain what purpose it believed Clause 9 served if Clause 9 was not an arbitration clause.  Instead, Dynamic simply reads the entire clause out of the

contract.  Such a method of construction ignores the principle that "[a] contract should be construed so as to give full meaning and effect to all of its provisions."  Am. Exp. Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277 (1st Dep't 1990).  In sum, Clause 9 is a valid and enforceable agreement to arbitrate.

*iii.*      *Clause 9 Encompasses Dynamic's Claims Against Air India.*

Having determined that the Clause 9 of the 2013 and 2014 Agreements requires the parties to arbitrate their disputes, the Court must determine whether Dynamic's claims against Air India fit within the scope of the Clause.  The federal policy favoring arbitration generally requires that "'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration."  Shaw, 322 F.3d at 120 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25).  However, "the obligation to arbitrate . . . remains a creature of contract."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).  As a result, courts should undertake a three-part inquiry in order "to determine whether a particular dispute falls within the scope of an agreement's arbitration clause."  Id.

First, a court should classify the arbitration clause in question as either broad or narrow.  Id.  Generally, very expansive language will suggest a broad arbitration clause.  Id. at 225.  Clause 9 plainly states that "any difference/dispute" should be submitted to final and binding arbitration.  It does not state that those differences or disputes need to arise out of the contract itself.  In fact, the language of the Clause erects no limit at all to the power of the "designated Authority."  It is thus undeniable that Clause 9 is a broad arbitration clause.  See Louis Dreyfus, 252 F.3d at 225 (2d Cir. 2001) (holding that arbitration clause requiring "[a]ny dispute arising from the making, performance or termination of this Charter Party" be arbitrated was a broad clause); Collins & Aikman Products Co. v. Bldg. Sys., Inc., 58 F.3d 16, 18 (2d Cir.

- 20 -

1995) (holding that arbitration clause requiring "[a]ny claim or controversy arising out of or relating to this agreement shall be settled by arbitration" was a broad clause).

Next, a court should determine whether the claims at issue arise directly under the agreement containing the arbitration clause or are collateral to it.  Louis Dreyfus, 252 F.3d at 227.  If the claims arise under the contract itself, the presumption of arbitrability applies.  Id. at 224.  Dynamic's breach of contract claim, its breach of the implied covenant of good faith and fair dealing claim, and its unjust enrichment claim all relate to Air India's performance under the terms of the 2013 and 2014 Agreements.  As a result, they fall within the scope of Clause 9 and should be submitted to arbitration in India.

Where a claim is collateral and an arbitration clause is broad, arbitration can still be ordered "if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'"  Id. (quoting Collins, 58 F.3d at 23).  Dynamic's remaining promissory estoppel claim relates to alleged promises made by Air India to Dynamic while the 2014 Agreement was in effect, which Dynamic understood to be an agreement to rehire Dynamic to perform the same services during the 2015 and 2016 Hajj.  (FAC ¶ 22).  Such a promise is connected to the 2013 and 2014 Agreements, but still might be considered collateral.  See Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983) ("A 'collateral' agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause.").  Importantly though, "[t]he burden is on the party resisting arbitration to demonstrate that the disputed issue is collateral."  Id.  Dynamic has not demonstrated that its promissory estoppel claim is collateral to the 2013 and 2014 Agreements.

The purported promise to rehire Dynamic implicates issues of the construction of, and the parties' rights and obligations under, the 2013 and 2014 Agreements.  First, the

purported promise was made while the 2013 and 2014 Agreements were in effect, and thus while the broad arbitration clause relating to "any difference/dispute" was in effect. And, second, the alleged promise by Air India was to rehire Dynamic to provide the same terms of service it was already obligated to perform in the 2013 and 2014 Agreements. For those reasons, even if the promissory estoppel claim is collateral, the claim is rightly submitted to arbitration under the terms of Clause 9.

In sum, the Court concludes that Clause 9 is an enforceable arbitration agreement that encompasses all of Dynamic's claims against Air India. For that reason, the Court grants Air India's motion to compel arbitration under the terms stated in Clause 9.[3]

### c.   There is No Basis to Enjoin the Indian Arbitration.

Finally, Dynamic asks the Court to enjoin Air India from proceeding with arbitration in India. It does not, however, offer any cogent reason why the Court should do so. Its primary argument is that the Court should enjoin the pending Indian arbitration in order to enforce the Court's own jurisdiction and to prevent vexatious parallel proceedings. However, having already decided that the arbitration should go forward, Dynamic's concerns are inapposite. Dynamic also intimates in its most recent letters to the Court that the current arbitrator, Mr. Kumar, appointed by the Ministry of Civil Aviation in India, is "not qualified to be an arbitrator and [is] not impartial." (June 16 Letter). Such an accusation does not provide a *prima facie* cause to enjoin the arbitration. The Court will not enjoin the pending arbitration, but Dynamic is free to raise those arguments that are available to it on a motion to vacate an arbitration award.

---

[3] No federal statutory right is asserted and all claims are being submitted to arbitration. See JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 169.

CONCLUSION.

Air India's motion to compel arbitration pursuant to Clause 9 of the 2013 and 2014 Agreements is GRANTED.  (Dkt. 26).  Dynamic's cross-motion to compel arbitration pursuant to the December 16 Letter and to enjoin Air India from proceeding with arbitration in India is DENIED.  (Dkt. 34).  The action is stayed pending a final decision in arbitration.  The parties shall file a written status report with the Court by December 7, 2016 or the action will be dismissed with prejudice.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 8, 2016